IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50204
Summary Calendar

_____


NATIVIDAD ZAVALA-GARCIA,

Petitioner-Appellant,

versus

KENNETH PASQUARELL, District Director
Immigration and Naturalization Service,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(SA-96-CV-52)

_____

September 18, 1998

Before GARWOOD, JONES and STEWART, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Petitioner-appellant Natividad Zavala-Garcia (Zavala) appeals the district court's grant of summary judgment denying habeas relief. We affirm.

**Facts and Proceedings Below**

The facts of this case are not in dispute. Zavala, a native

[*] Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and citizen of Mexico, was ordered excluded from the United States after unsuccessfully attempting to aid his niece, an undocumented alien, to gain illegal entry into the United States.[1]  At his exclusion hearing, Zavala conceded excludability and requested discretionary relief pursuant to section 212(d)(11) of the Immigration and Nationality Act (INA).  On July 21, 1994, the Immigration Judge (IJ) granted the requested section 212(d)(11) relief, and the Immigration and Naturalization Service (INS), disagreeing with the IJ's application of section 212(d)(11), appealed to the Board of Immigration Appeals (BIA or "the Board").  On July 5, 1995, the Board vacated the IJ's decision and ordered Zavala excluded and deported.  On September 18, 1995, Zavala filed a motion to reopen his exclusion proceedings, claiming that his recent completion of seven years' lawful residence rendered him newly eligible for discretionary relief under INA § 212(c).  The Board denied the motion to reopen on January 3, 1996, on the basis that Zavala was statutorily ineligible for section 212(c) relief because his "lawful" status had terminated upon the entry of a final deportation order by the Board.  On January 19, 1995, Zavala, under INS parole awaiting his physical removal from this country, filed the instant petition in the United States District Court for the Western District of Texas, seeking habeas relief under 28

---

[1]     In addition to instituting exclusion proceedings, the INS filed a criminal complaint charging Zavala with one count of conspiring to aid an undocumented alien to illegally enter the United States in violation of 8 U.S.C. § 1325 and 18 U.S.C. § 371. Zavala pleaded guilty to the charge and was sentenced to ninety days' imprisonment.

U.S.C. § 2241 and challenging the Board's decision finding him statutorily ineligible for section 212(d)(11) relief and the Board's denial of his motion to reopen. On February 25, 1997, the district court entered summary judgment denying habeas relief, from which judgment Zavala brought this timely appeal.

**Discussion**

This case presents one difficult jurisdictional issue coupled with two comparatively easy substantive claims.

I. Jurisdiction

The INS argues for the first time on appeal that the recently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996[2] (IIRIRA) operates to divest this Court of jurisdiction over Zavala's claims.[3] The basis for this jurisdictional challenge is found in IIRIRA § 306(a),[4] entitled "Exclusive Jurisdiction," which created new INA § 242(g):

> "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[5]

The effective date of this provision is provided by section 306(c),

---

[2]     Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

[3]     The INS argues on appeal that, pursuant to IIRIRA, neither the district court nor this Court has jurisdiction and urges us to remand the case to the district court with instructions to dismiss for lack of jurisdiction.

[4]     110 Stat. at 3009-612.

[5]     INA § 242(g) as amended by IIRIRA § 306(a), and codified at 8 U.S.C. § 1252(g) (West Supp. 1998).

which states that the new INA § 242(g) shall apply "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]."[6] Because Zavala's claims "arise" from a past exclusion proceeding, the INS argues that they fall within the broad sweep of the new INA § 242(g) and, consequently, outside the narrowed jurisdiction of this Court. Thus, the INS takes the position that "petitioner can obtain *no* judicial review of his challenge to the Board's final orders." (Emphasis added).[7]

While we recognize the apparent breadth of these provisions, we decline to accept the construction the INS proposes. When considered in isolation, the sweeping language of section 306 does appear to bar virtually all claims arising out of exclusion and deportation proceedings. It is, however, far from obvious that Congress intended the provision to operate in such a manner. As other courts have noted, the strict application of the new INA § 242(g) urged by the INS conflicts with the IIRIRA's "general rule" of nonretroactivity, as well as several of the transitional provisions contained in the statute. *See, e.g., Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir. 1998) ("If the 'notwithstanding' clause

---

[6]    110 Stat. at 3009-612.

[7]    The INS asserts that "according to the plain language of the new INA § 242(g), this court, as well as the district court, lacks jurisdiction over petitioner's appeal notwithstanding the fact that both final orders, from which he appeals, and his appeal to the district court, were filed prior to the enactment of IIRIRA. Simply put, petitioner cannot obtain judicial review in this Court, and [similarly can obtain relief] in no other court, as he seeks to challenge the Attorney General's decision to execute the removal order issued against him."

of subsection (g) is read to preclude any jurisdiction except that specifically authorized in new INA § 242, then that conflicts with IIRIRA § 309.").

Furthermore, the INS furnishes scant evidence that this position has been accepted by our sister circuits, citing only *Ramallo v. Reno*, 114 F.3d 1210 (D.C. Cir. 1997), and *Auguste v. Reno*, 118 F.3d 723 (11th Cir. 1997), as supporting its construction of the provision in question.  Unfortunately, neither of these two cases fully embraces the position that the INS has taken in the case *sub judice*.  The *Ramallo* court did adopt a broad application of the new INA § 242(g), stating that "IIRIRA now undisputably deprives both courts of appeals and district courts of jurisdiction to decide the instant action."  114 F.3d at 1213.  The court's holding, however, was tempered by the explicit recognition that "[a] statute that removes jurisdiction from all courts to vindicate constitutional rights poses serious constitutional objections."[8] Having rejected an application of IIRIRA that barred all judicial review, the court went on to state that it "need not decide whether the IIRIRA has such an [objectionable] effect, or, if it does, whether it is constitutional because, as the Government concedes, habeas review remains available to appellee to raise substantial constitutional questions." *Id.*  Thus, the *Ramallo* court limited its holding by pretermitting the question of whether new INA § 242(g) divested federal courts of all jurisdiction over the

---

[8]    *Id.* at 1214 (citing *Bartlett v. Bowen*, 816 F.2d 695, 703 (D.C. Cir. 1987).

5

claims described by section 242(g). The court also explicitly recognized the continued availability of habeas relief for "substantial constitutional questions" and did not specifically preclude potential habeas relief of nonconstitutional questions.[9] In sum, the *Ramallo* court did adopt a broad interpretation of the appropriate application of new INA § 242(g), but it did not, as the INS seems to imply in its brief, hold that IIRIRA acts as a complete bar to any and all forms of judicial review of the claims described in IIRIRA §§ 306(a) and (c).

The second case cited by the INS, *Auguste*, is even less helpful. While the original opinion in *Auguste* did adopt a broad interpretation of the new INA § 242(g),[10] the court subsequently modified its decision on petition for rehearing. *Auguste v. INS*, 140 F.3d 1373 (11th Cir. 1998). In the modified opinion, the court reversed its conclusion that new INA 242(g) automatically divested it of jurisdiction over appellee's petition for review of his deportation order, finding that the transitional rules set out in

---

[9] It should be noted that the court did imply that habeas review might be limited to constitutional claims, but because it did not reach the issue of whether IIRIRA created an absolute bar to judicial review, the court did not expressly rule on the scope of available habeas review. Thus, the narrow holding of *Ramallo* does not preclude the possibility of continued habeas review of nonconstitutional claims.

[10] The original decision in *Auguste* held that, as of the effective date of the new INA § 242(g), "no court has had jurisdiction to review [appellee's] deportation order, except as provided by newly amended [8 U.S.C. § 1252]." 118 F.3d at 725. Finding that appellee had not complied with 8 U.S.C. § 1252, the court held that it lacked jurisdiction over the case and remanded it to the district court with instructions to dismiss. *Id.* at 726-27.

IIRIRA § 309(c) rendered the IIRIRA amendments inapplicable to appellee. *Id.* at 1376-77. The court based its conclusion on IIRIRA § 309(c), which provides that an alien who is "in exclusion or deportation proceedings" before the statute's effective date is exempted from the IIRIRA amendments, including the limitations on judicial review.[11] Apparently finding that petitioner's direct appeal, which was pending on the effective date, sufficed to bring the case within the section 309(c) requirement that the alien be "in exclusion or deportation proceedings," the court held that it had jurisdiction over the case and proceeded to rule on the merits. *Id.* at 1377. The court concluded that section 309(c) "carves out an exception to section 306(g)'s general abrogation of the federal courts' jurisdiction over deportation proceedings not conducted pursuant to [the amended INA provisions for judicial review]," *id.* at 1376-77, and held that pursuant to IIRIRA § 309(c) it "retain[ed] jurisdiction to review deportation proceedings for aliens whose proceedings were pending on April 1, 1997." *Id.* at 1377. Thus, instead of supporting the INS's argument that we lack jurisdiction over Zavala's claims, *Auguste* suggests a potential basis for jurisdiction. Because Zavala's case was pending on April 1, 1997, under the reasoning of *Auguste*, both the district court and this Court retained jurisdiction over the claims raised in Zavala's habeas petition.

The INS position is further weakened by two recent cases that

---

[11] 110 Stat. at 3009-625, as amended by Act of Oct. 11, 1996, § 2, Pub. L. No. 104-302, 110 Stat. 3656, 3657.

7

have recognized continued jurisdiction over claims arising from exclusion and deportation proceedings under 28 U.S.C. § 2241. First, in *Goncalves,* the First Circuit squarely rejected the argument that the new INA § 242(g) completely divested federal district courts of jurisdiction over claims arising out of exclusion and deportation proceedings. In response to an argument similar to the one made by the INS in the case *sub judice*, the *Goncalves* court stated that "[a]lthough the breadth of the 'notwithstanding' clause [in the new INA § 242(g)] is sweeping, a reading which provided for no exceptions would have enormous consequences that are contrary to clearly expressed congressional intent." *Id.* 144 F.3d at 122. The court then proceeded to hold that neither the AEDPA or IIRIRA abrogated federal courts' habeas jurisdiction granted pursuant to 28 U.S.C. § 2241 to decide certain classes of claims arising out of immigration proceedings. *Id.* at 122-23. The *Goncalves* court declined to define the scope of habeas review available under section 2241, holding only that such review specifically included statutory questions as well as constitutional claims.[12] *Id.* at 124-25. The Second Circuit came to a similar conclusion in *Jean-Baptiste v. Reno*, 144 F.3d 212 (2d Cir. 1998), stating in dicta that "[n]othing in the language of either the

---

[12] It should be noted that *Goncalves* differs from the case at bar in that it considered the interaction of IIRIRA § 309(c)(4)(G), which provides that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed [certain classes of] criminal offense[s]," with the more general jurisdictional bar posed by new INA § 242(g). This difference, however, does not affect the court's interpretation of the new INA § 242(g) nor does it weaken the applicability of that analysis in the case *sub judice*.

[AEDPA] or the [IIRIRA] suggests that Congress expressly repealed § 2241, limited its scope, or eliminated the jurisdiction of the district courts under that statute to entertain petitions seeking writs of habeas corpus." *Id.* at 219. The *Jean-Baptiste* court also declined to expound upon the types of claims cognizable under section 2241 jurisdiction, explaining that "in finding that § 2241 habeas review remains available for aliens deemed deportable under certain circumstances to raise constitutional questions, we express no opinion on the permissible scope of that review." *Id.* at 220.

As regards the specific source of our jurisdiction in this case, the discussion above outlines two potential bases for jurisdiction: First, under the reasoning of *Auguste*, Zavala's pending appeal would be sufficient to qualify him as being "in exclusion or deportation proceedings," bringing him within the IIRIRA § 309(c) exception to the IIRIRA amendments, including the new section 242(g); and second, Zavala's claims may be cognizable pursuant to 28 U.S.C. § 2241 on the reasoning advanced in *Goncalves*. Other arguable bases for jurisdiction could be enumerated,[13] but considering that this and every other circuit court to consider this issue has concluded that some avenue of review has been retained,[14] and because the particular source of our

---

[13]    *See, e.g., American-Arab Anti-Discrimination Committee v. Reno*, 119 F.3d 1367, 1372 (9th Cir. 1997) (holding that INA § 242(g) necessarily "incorporated by reference" several exceptions to its seemingly absolute bar to federal jurisdiction).

[14]    As stated by the *Goncalves* court:

"In every circuit which has addressed constitutional challenges to this withdrawal of jurisdiction, the court

jurisdiction does not—in the context of this particular case—affect the manner in which we review Zavala's claims,[15] further inquiry into the jurisdictional questions raised on appeal appears to be both unnecessary and unwarranted.[16]  Thus, because the

---

found that preclusion of all judicial review would present serious constitutional questions, and in every case those questions were avoided by noting the continuing availability of habeas review. Although the cases diverge in their approaches, they all agree on these two basic points--that Congress can constitutionally withdraw jurisdiction over such petitions for review under old INA § 106, but that some jurisdiction remains on habeas." *Goncalves*, 144 F.3d at 126 (citing *Turkhan v. INS*, 123 F.3d 487, 489-90 (7th Cir. 1997); *Mansour v. INS*, 123 F.3d 423, 426 (6th Cir.1997); *Auguste v. Reno*, 118 F.3d 723, 726 n.7 (11th Cir.1997); *Ramallo v. Reno*, 114 F.3d 1210, 1214 & n.1 (D.C.Cir.1997); *Williams v. INS*, 114 F.3d 82, 83-84 (5th Cir.1997); *Fernandez v. INS*, 113 F.3d 1151, 1154-55 (10th Cir.1997); *Salazar-Haro v. INS*, 95 F.3d 309, 311 (3d Cir.1996); *Hincapie-Nieto v. INS*, 92 F.3d 27, 30-31 (2d Cir.1996); *Duldulao v. INS*, 90 F.3d 396, 400 n. 4 (9th Cir.1996)).

[15]     We note that because Zavala was in exclusion, rather than deportation, proceedings, the proper avenue of review under the old INA § 106(b) was to petition for habeas review in the district court.  *See, e.g., Delgado-Carrera*, 773 F.2d 629, 631 (5th Cir. 1985) (noting that federal circuit courts "do not have power to review an order of exclusion, except on appeal of a habeas corpus proceeding filed in district court").  Thus, under either of the potential bases of jurisdiction, Zavala appears to have filed a timely petition in the appropriate court.

[16]     It is appropriate to note that the neither the INS nor the Attorney General seems to have adopted a consistent position with respect to the question of where any constitutionally mandated habeas jurisdiction is grounded.  Contrary to the position taken in the case *sub judice*, in past cases involving the analogous jurisdiction-stripping provision contained in section 440(a) of the AEDPA, the INS has conceded that some avenue for judicial review is preserved, but has argued that there is no need to determine the jurisdictional basis for such review.  For example, in *Kolster v. INS*, 101 F.3d 785 (1st Cir. 1996), the court noted that:

"The INS's precise position is that such constitutionally
    compelled habeas review, or its equivalent, remains, and
that we need not here determine 'whether the jurisdictional basis
for "constitutional habeas" review of a deportation order would be
28 U.S.C. § 2241, section 1651, or a 'free standing' Constitutional
authorization."  *Id.* at 790 n.4.

jurisdictional issues were not fully briefed on appeal, and because neither party has taken into consideration recent developments in the applicable law, we choose to cut rather than further unravel the Gordian knot presented to us on appeal, holding without additional discussion that this Court properly exerts jurisdiction over the case at bar based on either or both of the jurisdictional bases discussed above.[17]

---

In a subsequent case considering the proper construction of IIRIRA § 306, the Attorney General conceded, in the words of the court, that "there must be inherent authority in the judiciary to review certain non-constitutional claims, *i.e.*, whether the person being deported meets the statutory prerequisites." *Goncalves*, 144 F.3d at 119. The court went on to note, however, that:

> "It is far from clear from what source the Attorney General finds the authority for such review. One theory is that the authority may be derived not from an explicit statutory text but, at best, from the interstices of the various immigration statutes. Another theory is that the source of jurisdiction is the Constitution itself. Both theories present obvious problems." *Id.*

In the case at bar, the INS simply argues that *no* judicial review is available to Zavala. The INS, however, fails to address the implications of its proposed construction of new INA § 242(g), despite our consistent statements that some level of habeas review likely has been preserved. *See, e.g., Lerma de Garcia v. INS*, 141 F.3d 215, 217 (5th Cir. 1998), and *Williams v. INS*, 114 F.3d 82, 84 (5th Cir. 1997).

[17]     We are mindful of the Supreme Court's recent statement regarding the impropriety of pretermitting jurisdictional questions so as to enable the court to resolve contested questions of law when its jurisdiction is in doubt. *See Steel Co. v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1016 (1998). In the case *sub judice* we do not assume "hypothetical" jurisdiction in order to reach the merits of Zavala's petition. Rather, we have satisfied ourselves that we have jurisdiction over the specific case before us, but decline to engage in further discussion and analysis of the potential sources of our jurisdiction or to embrace one particular theory to the potential exclusion of the others where there is no clear indication of which source is more appropriate, where the jurisdictional issues raised were not fully briefed, and where recent developments in the caselaw have created inconsistent

11

II.  Substantive Claims

The BIA has been conferred broad discretion in deciding motions to reopen proceedings and is accorded deference in its statutory interpretation.  Statutory interpretation, however, is a question of law, which is reviewed *de novo*.  *Hernandez-Rodriguiez v. Pasquarell*, 118 F.3d 1034, 1039 (5th Cir. 1997).  Thus, we exert *de novo* review over both the Board's determination of Zavala's statutory ineligibility under sections 212(d)(11) and 212(c) and the district court's grant of summary judgment on these questions. *Id.*

In his petition to the district court, Zavala raised essentially two substantive issues.  He argued that the BIA erred in its interpretation of INA § 212(d)(11)[18] and that the Board abused its discretion in refusing to reopen his case to allow him to seek discretionary relief under INA § 212(c).[19]  The case was referred to a magistrate judge, who found Zavala's claims to be without merit and recommended that summary judgment be granted in favor of the INS.  The district court adopted the recommendation of the magistrate judge, denying Zavala's petition for habeas relief.

approaches to the jurisdictional issue presented.  The various approaches taken by the courts of appeals appear to lead to the same general conclusion (*i.e.*, that some habeas jurisdiction is retained by the federal courts and that this jurisdiction encompasses the authority to review constitutional claims as well as preserving the institutional function of federal courts to "say what the law is").  Because resolution of the precise basis of jurisdiction is not necessary to our disposition of the case *sub judice*, we leave it for another day.

[18]     8 U.S.C. § 1182(d)(11).

[19]     8 U.S.C. § 1182(c) (repealed 1996).

On appeal, Zavala reasserts the same arguments that he presented in the court below, contending on the basis of these arguments that the district court erred in granting summary judgment.

A. Section 212(d)(11)

Zavala's first claim involves a question of pure statutory construction. He argues that the BIA's interpretation of section 212(d)(11),[20] which provides for discretionary waiver of exclusion in certain circumstances, is incorrect as a matter of law because it contravenes the "plain language" of the provision. Consequently, Zavala contends that the Board erred in finding him statutorily ineligible for relief under this provision. We find this claim to be plainly without merit.

Zavala's argument is based on a hyper-technical grammatical construction of section 212(d)(11), which, in 1996, read as follows:

> "The Attorney General, may, in his discretion, for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) of this section in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntar[ily] and not under an order of deportation, and who is otherwise admissible to the United States as a returning resident under section 1181(b) of this title and in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title (other than paragraph (4) thereof) if the alien has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law."[21]

Thus, section 212(d)(11) defines two distinct categories of aliens

___

[20]    8 U.S.C. § 1182(d)(11).

[21]    8 U.S.C. § 1182(d)(11) (1996 West Supp.).

potentially eligible for waiver:  returning permanent resident aliens and aliens seeking admission or adjustment of status. Zavala argues, in essence, that because Congress failed to include a comma separating the language describing the second category of eligible aliens from the phrase requiring a specific familial relationship (*i.e.*, "if the alien has . . . aided only the alien's spouse, parent, son, or daughter"), the familial relationship requirement applies *only* to the second category of eligible aliens (those "seeking admission or adjustment of status") and not to the first category (returning resident aliens).[22]

We find Zavala's interpretation of section 212(d)(11) implausible on its face.  When read in context, it is reasonably clear that the familial relationship requirement was intended to apply to both categories of potentially eligible aliens.  Further, Congress recently corrected the punctuation error on which Zavala's argument is based.  The Omnibus Consolidated Appropriations Act of

---

[22]      Zavala states the essence of his grammatical argument as follows:

> "The absence of a comma after that phrase [describing the second category of eligible aliens] makes it impossible to use the language found in the defining construction (limiting the scope of smuggling to immediate family members) to identify a word that is not the object of that particular defining construction (which is 'the case' identifying the first dependent clause [which describes the first category of eligible aliens]).  The language that limits waivers to people who smuggle in immediate family members cannot be separated from its context to provide an additional element to the defining construction in an unrelated dependent clause just because the Board of Immigration Appeals would prefer this result."

14

1997,[23] contains a section entitled "Miscellaneous Technical Corrections," which includes a provision directing that "Section 212(d)(11) (8 U.S.C. 1182(d)(11)) is amended by inserting a comma after '(4) thereof)'."[24] Thus, Congress expressed its unambiguous intent that the familial relationship requirement apply to both categories of aliens eligible for section 212(d)(11) waiver.[25] Because the young woman whom Zavala aided was his niece, and not his "spouse, parent, son, or daughter," Zavala did not and does not meet the criteria for relief under section 212(d)(11). Therefore, the BIA did not err in finding Zavala statutorily ineligible, and the district court did not err in granting summary judgment as to Zavala's first claim.

B.  Section 212(c)

Zavala's second claim is that the BIA erred in denying his motion to reopen exclusion proceedings so that he could seek relief under INA § 212(c).[26] He argues both that the BIA incorrectly

---

[23]     Pub. L. No. 104-208, 110 Stat. 3009 (1996).

[24]     Title VI, § 671(e)(3), 110 Stat. at 3009-723.

[25]     It should be noted that the legislative history of section 212(d)(11), as well as the general structure of the INA, also tend to refute Zavala's arguments. Further, these arguments were propounded, and the precise issue before us ably disposed of adversely to Zavala, by a federal district court in *Compean-Guevara v. Solis*, 939 F.Supp. 551 (W.D. Tex. 1996) and by the BIA in *Matter of Compean*, Int. Dec. 3249 (BIA 1995) (1995 WL 314391).

[26]     Prior to its repeal, 8 U.S.C. § 1182(c) provided, in pertinent part, that "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General." (Repealed by Pub. L. No. 104-208, Div. C, Title III, § 304(b),110 Stat. 3009-597

15

interpreted section 212(c) and that the Board violated its own promulgated regulations in denying his motion to reopen on the basis that he was ineligible for the relief he sought. Both of these arguments are foreclosed by the prior decisions of this Court.

Section 212(c) has traditionally provided an avenue for discretionary relief to "[a]liens lawfully admitted for permanent residence" who, after a temporary absence from the country, are "returning to a lawful unrelinquished domicile of seven years." At his exclusion hearing, Zavala, through counsel, conceded that he was not eligible for section 212(c) relief because he did not meet the seven year requirement. On April 28, 1995, while his case was pending appeal to the BIA, Zavala completed his seven year's residence. He did not, however, apply for section 212(c) relief at that time. More than two months later, on July 5, 1995, the BIA issued a final order, vacating the IJ's decision and ordering Zavala excluded and deported. On September 18, 1995, he filed a motion to reopen the proceedings, seeking to be considered for section 212(c) relief. The BIA found Zavala statutorily ineligible for waiver under section 212(c) and consequently denied his motion to reopen. In his habeas petition to the district court and on appeal in this Court, Zavala seeks to challenge the BIA's decision, arguing that it erred as a matter of law in finding him statutorily ineligible.

Clearly applicable circuit precedents preclude Zavala's

_____

(1996)).

16

arguments.  In *Ghassan v. INS*, 972 F.2d 631 (5th Cir. 1992), we held that "after the BIA decides that an alien is deportable, he is no longer a legal resident and thus is not eligible for section 212(c) relief, so his petition for reopening must be rejected." *Id.* at 637-38.  Thus, under *Ghassan*, Zavala's status as a legal resident ended on July 5, 1995, the date that the BIA ruled him excludable and ordered him excluded and deported.  Consequently, when Zavala filed his motion to reopen on September 18, 1995, he was no longer eligible to be considered for a section 212(c) waiver.  Although Zavala asserts that the BIA erred in finding that he was no longer a lawful permanent resident alien at the time that he filed his motion to reopen, he fails to cite a single decision from this Circuit in support of this contention.  *Ghassan* is directly applicable in the case at bar and dictates the conclusion that Zavala lost his status as a lawfully admitted alien prior to filing his motion to reopen.

In arguing that he should have been deemed eligible for a section 212(c) waiver, Zavala also seeks to take advantage of promulgated regulations governing the BIA's resolution of motions to reopen.  Specifically, Zavala relies on the regulations currently codified at 8 C.F.R. § 3.2(c)(1), which provide that "a motion to reopen proceedings for consideration or further consideration of an application for relief under section 212(c) of the Act (8 U.S.C. 1182(c)) may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."

17

Unfortunately, the current version of the regulation on which Zavala relies is inapplicable in the case *sub judice*. The provision quoted above did not become effective until after the BIA's denial of Zavala's motion to reopen, and the new regulations do not apply retroactively.[27] In *Hernandez-Rodriquez v. Pasquarell*, 118 F.3d 1034, 1041 (5th Cir. 1997), we considered and rejected the retroactive application of this particular provision, holding that "a habeas petitioner cannot take advantage of procedural changes in the regulations governing section 212(c) relief on a collateral habeas challenge to the order of exclusion when the Board's denial of a motion to reopen was proper under the standards applicable at the time it denied the motion." Consequently, although the current version of the regulatory provision relied on by Zavala may be in tension with *Ghassan* and other decisions of this Court, we have unequivocally rejected "the notion that the promulgation of new regulations governing Board procedure can serve to invalidate final decisions of the Board on habeas review." *Id.* Therefore, because the Board's denial of Zavala's motion to reopen was correct under the regulatory standard and caselaw applicable at the time of the decision, and because the denial is not subject to challenge based on subsequently promulgated regulations, the Board did not err in finding Zavala ineligible for section 212(c) relief. Accordingly, the district court did not err in granting summary judgment in favor of the INS as to Zavala's second claim.

---

[27] The new regulations were promulgated by the Attorney General on April 29, 1996, and became effective on July 1, 1996. *See* 61 Fed.Reg. 18900, 18905 (1996).

**Conclusion**

We find Zavala's claims for habeas relief to be without merit and accordingly the judgment of the district court is

AFFIRMED.